The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: June 23, 2022

**No. A-1-CA-39025**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**KENTOINE JWAYNE PENMAN,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Mark Terrence Sanchez, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Kennedy Kennedy & Ives
Joseph P. Kennedy
Laura Schauer Ives
Albuquerque, NM

for Appellant

**OPINION**

**MEDINA, Judge.**

{1}      Defendant Kentoine Penman entered a conditional plea of no contest to two counts of possession of a controlled substance (NMSA 1978, § 30-31-23(A) (2011, amended 2021)); one count of battery upon a peace officer (NMSA 1978, § 30-22-24 (1971)); one count of assault on a peace officer (NMSA 1978, § 30-22-21(A)(1) (1971)); one count of resisting, evading or obstructing an officer (NMSA 1978, § 30-22-1(D) (1981)); one count of pedestrians on roadways (NMSA 1978, § 66-7-339 (1978, amended 2018)); and one count of possession of marijuana (Section 30-31-23(B)(1)). Defendant reserved the right to appeal the denial of two pretrial motions (1) to dismiss the criminal information, pursuant to *State v. Foulenfont*, 1995-NMCA-028, 119 N.M. 788, 895 P.2d 1329 (*Foulentfont* Motion), and to suppress all evidence and statements obtained as a result of an unlawful seizure; and (2) to suppress all evidence and testimony obtained in violation of the Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution, pursuant to *State v. Ochoa*, 2009-NMCA-002, 146 N.M. 32, 206 P.3d 143 (*Ochoa* Motion). We reverse the denial of the motion to dismiss as to the count of the pedestrians on roadways charge, but affirm the denial of the counts of battery, assault, and resisting, evading or obstructing an officer charges. We also affirm the district court's denial of Defendant's *Ochoa* Motion , holding that under the new

crime exception, evidence of the battery; assault; resisting, evading or obstructing an officer; controlled substances; and marijuana charges are admissible.

**BACKGROUND**

{2}     The following facts are based on testimony presented during an evidentiary hearing on Defendant's *State v. Ware*, 1994-NMSC-091, 118 N.M. 319, 881 P.2d 679 (*Ware* Motion), and *Foulenfont* motions, and the statement of probable cause supporting the criminal complaint. On an evening in June 2018 following completion of a traffic stop in a residential neighborhood, Hobbs Police Department Officers Jaimes, Martinez, and Gastelum drove further down the street from that traffic stop with their emergency lights activated, in order to detain and question two men, one of whom was Defendant, who were standing in the middle of the street. As the officers approached in their vehicles, the two men walked back toward the sidewalk. Once there, Officer Jaimes questioned Defendant on the sidewalk near where he was standing in the road.

{3}     Although Officer Jaimes had not seen the men walking on or along the road, he testified that he had "reasonable suspicion to believe that at some point [the two men] walked and got in the middle of the road" and that "[s]tanding in the middle of the road was good enough" to detain and investigate the two men for violating the pedestrians on roadways statute. *See* § 66-7-339(A) ("Where sidewalks are provided

2

it shall be unlawful for any pedestrian to walk along and upon an adjacent roadway.").[1]

{4}      Officer Jaimes asked Defendant for his identification during the stop and then communicated with a dispatch officer in order to ascertain whether Defendant had any outstanding warrants. Officer Jaimes explained that his standard operating procedure is to not cite individuals for violating Section 66-7-339 if they are "polite," but he will cite them if he discovers they have previously been warned. While Officer Jaimes spoke with Defendant, Officer Martinez interacted with a group of people who were standing nearby, and Officer Gastelum investigated the second man who was seen standing in the middle of the street for a violation of Section 66-7-339.

{5}      Shamus Wright, an onlooker (and the defendant in a related case, *City of Hobbs v. Wright*, A-1-CA-39028, mem. op. (N.M. Ct. App. Feb. 16, 2022) (nonprecedential)), verbally objected to Officer Jaimes's investigation of Defendant, causing Officers Martinez and Gastelum to focus on Mr. Wright. Soon thereafter, Officer Jaimes told Defendant to "hang on," and walked away from Defendant to

---

[1]Although both parties cite the 2018 version of Section 66-7-339, Defendant's June 2018 offenses predated the July 1, 2018, effective date of the 2018 amendment to the statute. Therefore, references in this opinion to Section 66-7-339 refer to the 1978 version of the statute unless stated otherwise. *See State v. Figueroa*, 2020-NMCA-007, ¶ 8, 457 P.3d 983 ("[T]he law in effect at the time a criminal offense is committed is controlling.").

3

assist in the arrest of Mr. Wright. Officer Jaimes did not recall if he had given Defendant his identification back when he left to assist in the arrest.

{6} Defendant did not remain where Officer Jaimes left him, but instead walked toward the officers and began filming the arrest of Mr. Wright on his phone. Defendant was standing less than two to three feet away from the officers when Officer Jaimes ordered Defendant to step back in order to increase the space between Defendant and Officer Martinez. Although not immediately, Defendant ultimately complied with the order, but then circled around Officer Jaimes and continued filming as Officer Martinez placed Mr. Wright in his patrol vehicle. At this time, Defendant was approximately four to five feet behind Officer Martinez. Officer Martinez told Defendant that he was placing him under arrest because "he was already told once to back away."

{7} Officer Martinez attempted to grab Defendant by the wrist to arrest him, but Defendant pushed Officer Martinez away and fled. Officer Martinez chased Defendant and physically forced Defendant to stop. Interpreting Defendant's stance as an act of aggression, Officer Martinez tackled Defendant to the ground and placed him under arrest.

{8} A baggy containing a white powdery substance was found where Defendant was arrested, and baggies containing a green leafy substance and a white crystalline substance were found in the patrol vehicle where Defendant was placed. The

contents of the baggies tested positive for cocaine, marijuana, and methamphetamine, respectively. Defendant admitted the cocaine and marijuana were his, but denied possession of the methamphetamine.

{9} Defendant was charged with two counts of possession of a controlled substance; one count of battery upon a peace officer; one count of assault upon a peace officer; one count of resisting, evading or obstructing an officer; one count of pedestrians on roadways; and one count of possession of marijuana.

{10} Defendant moved to dismiss the criminal information, in which he argued that the pedestrians on roadways; battery upon a peace officer; assault upon a peace officer; and resisting, evading or obstructing an officer charges were subject to dismissal under *Foulenfont*. Defendant additionally argued that all evidence and statements flowing from the stop should be suppressed because Officer Jaimes lacked reasonable suspicion to investigate him for violating Section 66-7-339. Defendant also moved to suppress all evidence under *Ware* because of the lack of lapel camera footage. The State responded that dismissal under *Foulenfont* would be inappropriate because the evaluation of the stop was not a purely legal question, but instead involved questions of fact. The State argued in addition that the investigatory stop was supported by reasonable suspicion, and if not, given "Defendant's use of force against [Officer Martinez]," evidence of Defendant's drug offenses, battery, assault, and resisting, evading or obstructing an officer charges were admissible

5

under the new crime exception to the exclusionary rule citing *State v. Tapia*, 2018-NMSC-017, ¶ 50, 414 P.3d 332. Defendant did not file a written reply responding to the State's new crime exception argument.

{11} The district court held an evidentiary hearing on the *Foulenfont* and *Ware* motions. At the close of evidence, Defendant argued that the officers were not acting in the lawful discharge of their duties because they lacked reasonable suspicion to believe Defendant violated Section 66-7-339. The State argued the officers had reasonable suspicion and reiterated that if the court found the officers lacked reasonable suspicion, the evidence of Defendant's crimes, not including pedestrians on roadways, should be admitted under the new crime exception because the facts of the case were sufficient to satisfy the attenuation doctrine factors. Defendant did not address the State's new crime exception argument. The district court announced that it would deny the *Ware* and *Foulenfont* motions and set a deadline for the parties to file requested findings of fact and conclusions of law. Although the State timely filed requested findings of fact and conclusions of law as to both motions, Defendant did not do so. The district court then entered findings of fact and conclusions of law for Defendant's *Foulenfont* and *Ware* motions. The following day Defendant untimely filed proposed findings of facts and conclusions of law.

{12} Defendant next moved to suppress all evidence under *Ochoa*, arguing that the initial stop was pretextual. Defendant argued first that Officer Jaimes lacked

reasonable suspicion to stop Defendant; and second that the stop was pretextual because (1) the purpose of the stop was "to run random wants and warrants checks on people living in the area"; (2) Defendant was ultimately charged with offenses unrelated to the stop; (3) the officers failed to follow proper body camera procedures; and (4) there was no actual threat to traffic safety. The district court summarily denied Defendant's *Ochoa* Motion, finding that the motion was "not well taken and should be denied." Five months after the denial of Defendant's *Ochoa* Motion, Defendant filed an offer of evidentiary proof regarding racial demographics and pedestrians on roadways stops over a two-year period in Hobbs, as well as excerpts from a deposition taken of a fellow Hobbs police officer regarding Officer Jaimes's police practices. With his offer of proof, Defendant did not renew or request the district court to reconsider the denial of his *Ochoa* Motion.

{13}    Defendant then entered a conditional plea, and this appeal followed.

**DISCUSSION**

**I.    Defendant's Motion to Dismiss Under *Foulenfont***

{14}    Defendant contends the district court erred in denying his motion to dismiss the charges of pedestrians on roadways; battery upon a peace officer; assault upon a peace officer; and resisting, evading or obstructing an officer under *Foulenfont*. We hold that the district court erred in denying Defendant's motion to dismiss the

pedestrians on roadways charge, but affirm the district court as to Defendant's remaining charges.

{15} "In *Foulenfont*, we stated that it was proper for a district court to decide purely legal matters and dismiss a case when appropriate before trial." *State v. LaPietra*, 2010-NMCA-009, ¶ 7, 147 N.M. 569, 226 P.3d 668. "Questions of fact, however, are the unique purview of the jury and, as such, should be decided by the jury alone." *Id.* A *Foulenfont* motion "may not be used to test the sufficiency of the [s]tate's evidence to establish the elements of the charged crime." *State v. Platero*, 2017-NMCA-083, ¶ 8, 406 P.3d 557. Instead, "the underlying question is whether the undisputed facts—whether stipulated to by the state or alleged in the indictment or information—show that the state cannot prove the elements of the charged offense at trial, thereby making a trial on the merits unnecessary." *Id.* ¶ 9 (alterations omitted) (citing *State v. Pacheco*, 2017-NMCA-014, ¶ 10, 388 P.3d 307); *see also* Rule 5-601(C) NMRA ("Any defense, objection or request which is capable of determination without a trial on the merits may be raised before trial by motion."). Stated "[m]ore succinctly, [the question is] whether the state could reasonably assert the availability of additional evidence." *Platero*, 2017-NMCA-083, ¶ 9 (internal quotation marks and citation omitted). Whether a district court properly grants or denies a defendant's motion to dismiss under *Foulenfont* presents a question of law that we review de novo. *State v. Winn*, 2019-NMCA-011, ¶ 9, 435 P.3d 1247.

{16}     We first address whether Defendant was entitled to pretrial dismissal of his pedestrians on roadways charge and, relatedly, whether the officer had reasonable suspicion to stop and investigate Defendant for this offense. We then address whether Defendant was entitled to pretrial dismissal of his battery, assault, and resisting, evading or obstructing an officer charges.

## A.     Pedestrians on Roadways

{17}     Defendant contends he was entitled to dismissal of his pedestrians on roadways charge because (1) the plain language of Section 66-7-339(A) requires a pedestrian to walk "along and upon an adjacent roadway" to a sidewalk, and merely standing in the middle of a residential street without more, as a matter of law, was insufficient to establish a violation of Section 66-7-339; and (2) "[a]ny other reasonable officer . . . would not have asserted reasonable suspicion that [Defendant] was doing anything wrong by standing in [the middle of the] residential street." The State responds that (1) the purpose of Section 66-7-339 is "to prohibit pedestrians from being in the middle of the street where they could impede traffic and thereby endanger themselves and drivers"; (2) whether a person is standing or walking in the street is irrelevant; (3) "in any event [the officer] could reasonably infer that Defendant walked into the road"; and (4) Defendant's interpretation of the statute would lead to an absurd result. Defendant replies that the statute does not intend to criminalize standing in a roadway based on the plain language of Section 66-7-339

9

and that the Motor Vehicle Code contemplates a lawful use of roadways by pedestrians.

{18} Defendant's argument that standing in the middle of a residential street without evidence of walking along the street, as a matter of law, was insufficient to establish a violation of Section 66-7-339 involves an issue of statutory interpretation. Issues of statutory interpretation are issues of law that we review de novo. *State v. Holt*, 2016-NMSC-011, ¶ 9, 368 P.3d 409. "The plain language of the statute is the primary indicator of legislative intent, so we look first to the words the Legislature used and their ordinary meaning." *State v. Gutierrez*, 2007-NMSC-033, ¶ 30, 142 N.M. 1, 162 P.3d 156. "Under the plain meaning rule, when a statute's language is clear and unambiguous, we will give effect to the language and refrain from further statutory interpretation." *State v. Hubble*, 2009-NMSC-014, ¶ 10, 146 N.M. 70, 206 P.3d 579 (internal quotation marks and citation omitted). In applying the plain meaning rule, we additionally consider the "context surrounding a particular statute, such as its history, its apparent object, and other [related] statutes." *State v. Cleve*, 1999-NMSC-017, ¶ 8, 127 N.M. 240, 980 P.2d 23.

{19} Section 66-7-339 states:

> A. Where sidewalks are provided it shall be unlawful for any pedestrian to walk along and upon an adjacent roadway.
>
> B. Where sidewalks are not provided any pedestrian walking along and upon a highway shall when practicable walk only on the left side

of the roadway or its shoulder facing traffic which may approach from the opposite direction.

{20} The plain language of Subsection (A) prohibits pedestrians from "walk[ing]" along a roadway where sidewalks are provided, and does not include the word "standing." In addition the term "walk" is modified by the term "along," meaning "in a line parallel with the length or direction." *Webster's Third New Int'l Dictionary* (2002); *see State v. Boyse*, 2013-NMSC-024, ¶ 9, 303 P.3d 830 (recognizing that we use the dictionary for guidance when determining the plain meaning of statutory language). Reading Subsection (A) together with Subsection (B), which requires a pedestrian, in the absence of sidewalks, to walk along the left side of the roadway or its shoulder facing traffic when practicable, we conclude that Section 66-7-339(A) prohibits the act of walking "along and upon an adjacent roadway" when sidewalks are provided. As such, we find the State's argument that whether Defendant was "walking" or "standing" is irrelevant under the statute unpersuasive.

{21} Furthermore, construing the statute to prohibit standing in the middle of the roadway, as urged by the State, would require this Court to read language into Subsection (A) that is not there, and ignore the explicit prohibition of "walking along and upon," neither of which we will do. *See State v. Trujillo*, 2009-NMSC-012, ¶ 11, 146 N.M. 14, 206 P.3d 125 ("We will not read into a statute any words that are not there, particularly when the statute is complete and makes sense as written."); *see also State v. Montoya*, 2015-NMSC-010, ¶ 66, 345 P.3d 1056 (noting that "a statute

11

must be construed so that no part of the statute is rendered surplusage or superfluous" (alteration, internal quotation marks, and citation omitted)).

{22} To the extent the State also argues that the purpose of Section 66-7-339 is "to prohibit pedestrians from being in the middle of the street where they could impede traffic and thereby endanger themselves and drivers," we note that Officer Jaimes testified there was no other traffic in the area other than the vehicle he had previously stopped. And although we agree that a general purpose of the statute is safety, we do not agree that the Legislature intended for anyone who is observed standing in the middle of the roadway, however briefly, for any possible reason, to be subject to punishment under the statute. Such an interpretation fails when "viewed under the lens of practicality" and when the statute clearly identifies that the conduct subject to penalty—walking along and upon an adjacent roadway when a sidewalk is otherwise available for that purpose. *State v. Goodman*, 2017-NMCA-010, ¶ 15, 389 P.3d 311. As this case illustrates, such an interpretation would be absurd given that Section 66-7-339 and other statutes included in the Motor Vehicle Code contemplate lawful use of roadways by pedestrians, including pedestrians crossing a roadway at points other than marked crosswalks. *See, e.g.*, NMSA 1978, § 66-7-333(A) (1978) (stating that "[p]edestrians shall be subject to traffic-control signals at intersections" and "at all other places pedestrians shall be accorded the privileges and shall be subject to the restrictions stated in [Sections] 66-7-333 [to] . . . -340 [(1978, as

12

amended through 2018)]"); § 66-7-335(A) (requiring pedestrians to yield the right of way to vehicles on the roadway while crossing at any point other than within a marked crosswalk); § 66-7-337 (stating drivers must exercise due care to avoid accidents with any pedestrian on a roadway).

{23}    We, therefore, hold that the elements the State must show to prove a violation of Section 66-7-339(A) are (1) defendant was walking along and upon an adjacent roadway; and (2) a sidewalk was provided. We now apply Section 66-7-339(A) to the facts of this case.

**1.    Defendant Was Entitled to Pretrial Dismissal of His Pedestrians on Roadways Charge**

{24}    In reviewing rulings on motions to dismiss under *Foulenfont*, we look to the facts as alleged in the indictment and presented at the pretrial hearing to determine if the State could not prove these elements, making a trial unnecessary. *See Platero*, 2017-NMCA-083, ¶ 11. Officer Jaimes testified at the preliminary hearing and reaffirmed during the later evidentiary hearing that he did not see Defendant walking on the road. Rather, he testified that Defendant was only standing. And in the proceedings below and on appeal, the State does not contest that the officers did not see Defendant walking along the road. Instead, the State asserts that the officer "could reasonably infer that Defendant walked into the road" and that showing Defendant was walking is unnecessary.

**{25}** As discussed above, Section 66-7-339(A) makes it unlawful for a defendant to *walk along and upon* an adjacent roadway when a sidewalk is provided. Testimony at both the preliminary hearing and at the later evidentiary hearing indicates no officer observed Defendant walking along and upon the road when Officer Jaimes stopped him. In light of the uncontradicted facts presented, the State is unable to show as a matter of law that Defendant violated Section 66-7-339(A), and a trial was unnecessary. *See Platero*, 2017-NMCA-083, ¶ 11. We, therefore, reverse the district court's denial of Defendant's motion to dismiss the pedestrians on roadways charge under *Foulenfont*.[2]

**2. The Officer Lacked Reasonable Suspicion to Stop and Investigate Defendant**

**{26}** Despite having reversed the district court as to Defendant's pedestrians on roadways charge under *Foulenfont*, we address Defendant's contention that the officers' observation of Defendant standing in the middle of the road without more did not amount to reasonable suspicion that he was or had been violating Section 66-7-339(A). We do so as it is relevant to our later analysis of the district court's denial of Defendant's motion to suppress under *Ochoa*.

---

[2]Because we conclude the district court erred in denying Defendant's motion to dismiss the pedestrians on roadways charge under the language of the statute, we do not reach Defendant's alternative contention that Section 66-7-339(A) is unconstitutionally vague or overbroad.

14

{27} Defendant contends Officer Jaimes lacked reasonable suspicion to stop and investigate him for violating Section 66-7-339(A) because Officer Jaimes did not see him walking in the street. "Questions of reasonable suspicion are reviewed de novo by looking at the totality of the circumstances to determine whether the detention was justified." *Hubble*, 2009-NMSC-014, ¶ 5 (internal quotation marks and citation omitted). "A reasonable suspicion is a particularized suspicion, based on all the circumstances that a particular individual, the one detained, is breaking, or has broken, the law." *Id.* ¶ 8 (internal quotation marks and citation omitted). "We will find reasonable suspicion if the officer is aware of specific articulable facts, together with rational inferences from those facts, that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *Id.* (internal quotation marks and citation omitted).

{28} The State does not dispute that there was no testimony or evidence of Defendant walking, and instead contends that "Officer Jaimes could reasonably infer that Defendant walked into the road." But, as we concluded above, the elements of Section 66-7-339(A) are "walk[ing] along and upon an adjacent roadway" when "sidewalks are provided." Thus, the question is not whether Officer Jaimes had reasonable suspicion to believe Defendant had walked into the road, but rather along and upon the road.

15

{29}   Our review of New Mexico law reveals that no case has addressed whether an officer's observation of a pedestrian standing in the middle of a road is sufficient to provide reasonable suspicion to believe the pedestrian "walk[ed] along and upon" the road in violation of Section 66-7-339. However, the Washington Court of Appeals, in an unpublished opinion,[3] recently rejected an argument that a *Terry* stop was supported by reasonable suspicion of a pedestrian on the roadway, where the pedestrian was standing in the middle of the road. *See State v. J.Y.A.-V.*, 20 Wash. App. 2d 1008, *5-6 (Wash. Ct. App. 2021) (unpublished) (rejecting the state's argument that the officer could reasonably expect the defendant "would have to move at some point" when attempting to justify a stop under Wash. Rev. Code Ann. Section 46.61.250 (2019, amended 2022),[4] which is substantially similar to Section 66-7-339 when the officer testified that the defendant "was standing next to the pickup truck, not that she was walking or otherwise moving along and upon a highway" and "[t]here was no evidence to support a reasonable suspicion that [the

---

[3]Although it is not our practice to cite unpublished opinions, we are presented with an issue of first impression and the cases cited in this section provide useful factual examples of either the existence or absence of reasonable suspicion when analyzing stops for violating pedestrians on roadways statutes. *See, e.g.*, *Gormley v. Coca-Cola Enters.*, 2005-NMSC-003, ¶ 11 n.1, 137 N.M. 192, 109 P.3d 280.

[4]Wash. Rev. Code Ann. § 46.61.250(1) ("Where sidewalks are provided . . . it is unlawful for any pedestrian to walk or otherwise move along and upon an adjacent roadway.").

16

defendant] was about to start walking down the prohibited right side of the roadway").

{30} And jurisdictions with similarly worded statutes[5] have found reasonable suspicion or probable cause when there is evidence or testimony that a defendant was walking or running in the street at the time of the stop. *See, e.g.*, *People v. Binet*, 47 N.Y.S.3d 184, 184-85 (N.Y. App. Div. 2017) (affirming the trial court's denial of the defendant's motion to suppress for lack of reasonable suspicion and concluding the officers had reasonable suspicion to stop the defendant for violating New York Vehicle and Traffic Law Section 1156 (pedestrians on roadway) because the officers witnessed the defendant walking in the street); *State v. Landers*, No. A-09-587, 2009 WL 6472978, at *1-3 (Neb. Ct. App. Dec. 8, 2009) (affirming the trial court's denial of the defendant's motion to suppress finding that the officers had probable cause to arrest the defendant for violating Neb. Rev. Stat. Section 60-6, 156(1) because the evidence showed the defendant walking in the middle of the street when sidewalks were provided and reasonable suspicion that other criminal activity was afoot); *State v. Darling*, No. 0607014245, 2007 WL 1784185, at *4, *7

---

[5]*See, e.g.*, N.Y. Veh. & Traf. Law § 1156(a) (1959) ("Where sidewalks are provided and they may be used with safety it shall be unlawful for any pedestrian to walk along upon an adjacent roadway."); Neb. Rev. Stat. § 60-6, 156(1) (1993) ("Where a sidewalk is provided and its use is practicable, it shall be unlawful for any pedestrian to walk along and upon an adjacent roadway or shoulder."); Del. Code Ann. tit. 21, § 4146(a) (2014) ("Where a sidewalk is provided and is accessible, it shall be unlawful for any pedestrian to walk along and upon an adjacent roadway.").

17

(Del. Super. Ct. July 3, 2007) (order) (finding that the stop of the defendant was constitutionally reasonable and denying the defendant's motion to suppress because the officer observed a clear violation of Del. Code Ann. tit. 21, Section 4146(c) (similar to Section 66-7-339(B)) when the defendant walked eastbound in the eastbound lane of the street).

{31}    Here, as stated above, there was no testimony that Defendant was walking along and upon the road when Officer Jaimes stopped him. Nor did Officer Jaimes articulate any facts that would support a reasonable inference that Defendant had walked along and upon the adjacent road prior to the officer's arrival. Therefore, we hold that Officer Jaimes lacked reasonable suspicion to stop Defendant for a violation of Section 66-7-339.

**B.    Battery and Assault Upon a Peace Officer and Resisting, Evading or Obstructing an Officer**

{32}    Defendant argues that the district court improperly denied his *Foulenfont* Motion on the battery upon a peace officer, assault upon a peace officer, and resisting, evading or obstructing an officer charges. Specifically, Defendant maintains the officers were not acting in the lawful discharge of their duties and lacked reasonable suspicion for the stop, and as such "there can be no charge of resisting or obstructing an officer" or "[f]elony assault and felony battery charges." Defendant additionally contends the officers were not acting in the lawful discharge

18

of their duties because he did not resist the officers before the officers decided to arrest him and he was "engaging in protected First Amendment activity."[6]

{33} The statutes identifying the crimes of battery upon a peace officer, assault upon a peace officer, and resisting, evading or obstructing an officer require, in relevant part, that the officer be "in the lawful discharge of his duties" when the crime is committed. *See* § 30-22-21(A)(1) (defining assault upon peace officer); § 30-22-24(A) (defining battery upon peace officer); § 30-22-1(D) (defining resisting, evading or obstructing an officer).

{34} In analyzing whether an officer was acting within his or her lawful discharge of duties, the question "is whether the officer was performing his or her official duties." *State v. Nemeth*, 2001-NMCA-029, ¶ 54, 130 N.M. 261, 23 P.3d 936 (internal quotation marks and citation omitted), *overruled on other grounds by State*

---

[6]Based upon Defendant's *Foulenfont* Motion below and briefing on appeal, we view Defendant's First Amendment argument as part of the overall argument that the officers were not in the lawful discharge of their duties, and we treat it as such. To the extent Defendant intends to raise a unique First Amendment challenge on appeal, the argument is both undeveloped and unpreserved. Defendant only states he "was engaging in protected First Amendment activity" along with citations to three, unexplained federal cases in support. "Defendant does little to develop this argument in his briefing and therefore, we do not address it." *State v. Aguilar*, 2019-NMSC-017, ¶ 55, 451 P.3d 550 (declining to address the defendant's double jeopardy argument on appeal because appellate courts will not review unclear arguments or guess what a party's arguments might be). Furthermore, Defendant's *Foulenfont* Motion below did not make a First Amendment challenge. "We do not address issues that were not raised below. The trial court must be alerted to the problem and given an opportunity to resolve it." *State v. Salazar*, 2006-NMCA-066, ¶ 9, 139 N.M. 603, 136 P.3d 1013.

*v. Ryon*, 2005-NMSC-005, ¶ 28, 137 N.M. 174, 108 P.3d 1032.[7] Whether the officers are acting in the lawful discharge of their duties is a question of fact. *See State v. Mares*, 1979-NMCA-049, ¶ 15, 92 N.M. 687, 594 P.2d 347 (holding that the "trial court could not properly decide the question of lawfulness" and the trial court's "decision concerning lawfulness was error because it usurped the jury's function to decide the facts"). "When an issue involves a specific determination or finding, especially when it is an element of the offense, it is a question that is within the unique purview of the jury." *LaPietra*, 2010-NMCA-009, ¶ 10. Even in instances where a defendant's seizure is determined to be unlawful, a jury could still find that

[7]To the extent Defendant relies on *State v. Phillips*, 2009-NMCA-021, ¶ 16, 145 N.M. 615, 203 P.3d 146, in which this Court stated that "whether an officer is acting lawfully is measured by his actual legal authority, including common-law, statutory, or constitutional limitations on the officer's authority," his reliance on *Phillips* is misplaced because *Phillips* is not controlling authority. In *Phillips*, the defendant argued he could not be convicted of battery upon a peace officer because the officer lacked probable cause to detain him. *Id.* ¶ 9. This Court held that the officer did have probable cause. *Id.* ¶ 23. Despite so holding, this Court engaged in an extensive discussion on whether the defendant could be convicted of battery upon a peace officer if the defendant was unlawfully arrested. *See id.* ¶¶ 10-19. This discussion, on which Defendant relies, was not necessary to this Court's decision and was therefore dicta. *See Ruggles v. Ruggles*, 1993-NMSC-043, ¶ 22 n.8, 116 N.M. 52, 860 P.2d 182 (stating that language unnecessary to the decision of the issues before the Court is dicta "no matter how deliberately or emphatically phrased"). Furthermore, this Court's discussion in *Phillips* is contrary to our Supreme Court's articulation of the meaning of "lawful discharge of his duties" in *State v. Doe*, 1978-NMSC-072, ¶¶ 12-13, 15, 92 N.M. 100, 583 P.2d 464, which we are bound to follow as controlling authority. *See Aguilera v. Palm Harbor Homes, Inc.*, 2002-NMSC-029, ¶ 6, 132 N.M. 715, 54 P.3d 993 (stating that the Court of Appeals remains bound by our Supreme Court precedent).

20

the officers acted in the lawful discharge of their duties. *See State v. Tapia*, 2000-NMCA-054, ¶ 16, 129 N.M. 209, 4 P.3d 37 ("[T]he fact that an arrest was unlawful does not preclude a finding that an officer acted in the 'lawful discharge' of his duties."). Because the question of whether an officer was acting in the lawful discharge of his or her duties is a question of fact, Defendant was not entitled to dismissal of his remaining charges as a matter of law under *Foulenfont*. We, therefore, affirm the district court's denial of Defendant's motion as to these charges.

## II.    Defendant's Motion to Suppress All Evidence Under *Ochoa*

{35}    Finally, Defendant argues that the district court improperly denied his motion to suppress, contending Officer Jaimes lacked reasonable suspicion for the stop, and that the district court erred in failing to hold an evidentiary hearing to determine whether Officer Jaimes instigated the stop as a pretext to search for further criminal activity, in violation of the United States Constitution, the New Mexico Constitution, and *Ochoa*. The State responds that Defendant was not seized until arrest,[8] and even

---

[8] Although the State argues on appeal that Officer Jaimes did not seize Defendant, the district court found that "[o]n that evening [D]efendant was in the roadway, . . . he was detained and questioned by Officer Jaimes about his presence in the roadway." We have additionally held a similar set of facts constituted a seizure. *See State v. Soto*, 2008-NMCA-032, ¶ 17, 143 N.M. 631, 179 P.3d 1239 ("With that show of authority [approaching the defendant in a police vehicle], a reasonable person would not have felt free to decline to answer the officer's questions and request for identification, nor would a reasonable person have felt free to [leave] while the officers held the person's driver's license to check for outstanding warrants."). As such, we do not address this argument further.

21

if Defendant was seized, Defendant's physical altercation with Officer Martinez constituted a new criminal act, therefore making the evidence admissible. "Appellate review of a motion to suppress presents a mixed question of law and fact. We review factual determinations for substantial evidence and legal determinations de novo." *State v. Paananen*, 2015-NMSC-031, ¶ 10, 357 P.3d 958 (internal quotation marks and citation omitted).

{36}     *Ochoa* provides a three-step approach the district court must follow when determining whether a pretextual stop has occurred. First, the district court must determine if there was reasonable suspicion or probable cause for the stop, and as usual the state bears the burden of proof. *Ochoa*, 2009-NMCA-002, ¶ 40. Second, if the stop can be "justified objectively on its face," and the defendant continues to assert that the stop was pretextual, the district court must decide whether the motive for the stop was "unrelated to the objective existence of reasonable suspicion or probable cause." *Id.* (internal quotation marks and citation omitted). The defendant bears the burden based upon the totality of the circumstances and must place substantial facts in dispute. *Id.* Third, if the defendant places substantial facts in dispute, there is a rebuttal presumption that the stop was pretextual, and the burden shifts to the state to show that the officer would have stopped the defendant, regardless. *Id.*

22

{37} At the outset, we observe that *Ochoa* involved a vehicle traffic stop and specifically discussed pretextual stops in that context. *See id.* ¶¶ 4, 38. In addition, no New Mexico case has decided that *Ochoa* applies to a pedestrian stop, and neither party argues the applicability of *Ochoa* to pedestrian stops on appeal. Rather, both parties assume that *Ochoa* applies. We conclude however, that we need not address whether *Ochoa* applies because, assuming without deciding that *Ochoa* applies to pedestrian stops, the evidence of Defendant's battery, assault, and resisting, evading or obstructing, controlled substances, and marijuana charges are admissible under the new crime exception. As such, we affirm the district court as right for any reason. *See State v. Gallegos*, 2007-NMSC-007, ¶ 26, 141 N.M. 185, 152 P.3d 828 (holding that the appellate court will affirm the district court's decision if it is right for any reason, so long as it is not unfair to the appellant); *State v. Rector*, 2005-NMCA-014, ¶ 9, 136 N.M. 788, 105 P.3d 341 (affirming a district court's denial of a motion to suppress that was based on the finding of reasonable suspicion on the alternative grounds of attenuation). Because we affirm on this ground, we need not address Defendant's argument that the district court should have held an evidentiary hearing to determine the motive for the stop. We explain.

{38} Indeed, our analysis under *Ochoa* would end at the first step, our having already concluded that the officer lacked reasonable suspicion to stop and investigate Defendant under Section 66-7-339. *See Ochoa*, 2009-NMCA-002, ¶ 40. Evidence

23

found as a result of an unconstitutional seizure would be suppressed unless an exception to the exclusionary rule applies. *See Tapia*, 2018-NMSC-017, ¶¶ 13-14. Here, as the State contends, Defendant's physical altercation with Officer Martinez creates such an exception as a new crime, allowing the evidence of Defendant's other charges to be admissible.

**{39}** A brief discussion of the new crimes exception will be helpful to our analysis. We originally adopted the new crime exception for violent crimes, although not by name, in *State v. Travison B.*, 2006-NMCA-146, 140 N.M. 783, 149 P.3d 99; *see also Tapia*, 2018-NMSC-017, ¶ 19 (discussing our adoption of the new crime exception). In *Travison B.*, this Court assumed officers unlawfully entered an apartment while responding to a domestic disturbance, who then encountered an angry juvenile who battered an officer. 2006-NMCA-146, ¶¶ 2, 9. We held that even though the battery was precipitated by the unlawful entry, "[the c]hild's actions against the officers constituted new criminal activity that is not subject to the exclusionary rule." *Id.* ¶ 9. We held that "even if there is a causal connection between [the c]hild's actions and the officer's presence, [the c]hild's actions were sufficiently separate and distinct from the officer's entry that the exclusionary rule . . . does not extend to suppress the officer's testimony about [the c]hild's acts of a new crime against the officers." *Id.* ¶ 11.

24

{40} Our Supreme Court further discussed and clarified the new crime exception in *Tapia*. In *Tapia*, the defendant was a passenger in a vehicle stopped for going 40 miles per hour in a 55 mile per hour zone and because the officers could not read the license plate. 2018-NMSC-017, ¶ 2. One of the officers involved in the stop noticed the defendant was not wearing a seatbelt, and the officer asked for the defendant's license. *Id.* The defendant stated he did not have a license, and instead gave the officer his brother's identifying information and signed as his brother for the seat belt citation. *Id.* ¶¶ 1-3.

{41} At the same time, a second officer was notified of the defendant's real identity by a second passenger. *Id.* ¶ 4. When asked to clarify his identity, the defendant again gave his brother's information. *Id.* The officers arrested the defendant and charged him with concealing identity, forgery, and the seat belt violation. *Id.* ¶¶ 4-5. The defendant moved to suppress all evidence, arguing that the traffic stop was unlawful. *Id.* ¶ 6. The district court granted the motion to suppress with regard to the seat belt violation, but denied the motion with respect to the forgery and concealing identity charges. *Id.*

{42} Our Supreme Court affirmed, agreeing with the state that the new crime exception applied. *Id.* ¶¶ 9, 50. In *Tapia*, our Supreme Court expanded the new crime exception to apply to both violent and nonviolent crimes committed in response to unlawful police action, even when the evidence obtained as a direct result of the

unlawful activity is suppressed. *Id.* ¶ 50. The Court held that "[a]pplication of the three-part federal attenuation analysis comports with our preference to assess the reasonableness of law enforcement by considering the totality of the circumstances of each case" under the federal or state Constitution when applying the new crime exception. *Id.* ¶ 47. Therefore, we look to "(1) the lapsed time between the illegality and the acquisition of the evidence, (2) the presence of intervening circumstances, and (3) the purpose and flagrancy of the official misconduct." *Id.* ¶ 15 (citing *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975)). Analyzing the facts through the attenuation factors, our Court held the "[d]efendant's attempts to conceal his identity after the unlawful traffic stop sufficiently purged the taint of the initial illegality so as to render the exclusionary rule inapplicable." *Id.* ¶ 50.

{43}     We turn to the three-factor attenuation analysis outlined in *Tapia*. For the first factor, there was no evidence presented at the evidentiary hearing regarding the amount of time between Officer Jaimes's stop of Defendant and the arrest of Defendant by Officer Martinez. Generally, we weigh this factor in favor of suppression unless substantial time has passed. *See id.* ¶ 35. Because we lack the information here that would assist in determining this factor, we will weigh it in favor of suppression. *See State v. Edwards*, 2019-NMCA-070, ¶ 11, 452 P.3d 413.

{44}     In contrast, the second factor, the presence of intervening circumstances such as the commission of new or independent criminal acts, weighs in favor of admission

of the evidence. The commission of a new crime may create an intervening circumstance sufficient to purge the taint of the initial illegality. *See Tapia*, 2018-NMSC-017, ¶¶ 36-37 (concluding that the defendant's new criminal activity created an intervening circumstance because the criminal act was "an unprompted act of his own free will"). Defendant's physical altercation with Officer Martinez was not part of Defendant's initial stop and interaction with Officer Jaimes and was not "a natural or predictable progression" of his interaction with Officer Jaimes. *See id.* ¶ 37. Rather Defendant engaged in combative behavior with Officer Martinez when Officer Martinez attempted to place Defendant under arrest. Thus the altercation did not progress from Defendant's "unlawful seizure [by Officer Jaimes] but rather [was] an unprompted act of his own free will." *See id.* Therefore, we weigh this factor in favor of attenuation.

{45}    Ending with the third factor, the purpose and flagrancy of the police misconduct, "[t]o be flagrant, more severe police misconduct is required than the mere absence of proper cause for the seizure." *State v. Ramey*, 2020-NMCA-041, ¶ 23, 473 P.3d 13 (quoting *Edwards*, 2019-NMCA-070, ¶ 12). A defendant must demonstrate purposeful and flagrant official misconduct where "(1) the impropriety was obvious, or the official knew his conduct was likely unconstitutional but continued nonetheless; or (2) the misconduct was investigatory in design and purpose." *Ramey*, 2020-NMCA-041, ¶ 24 (internal quotation marks and citation

27

omitted). Although Defendant argues on appeal that Officer Jaimes lacked reasonable suspicion under the statute to stop him for a violation of Section 66-7-339 and that the stop was pretextual, the record does not indicate police conduct that would rise to the level of flagrant during the initial traffic stop. Officer Jaimes testified that he believed Defendant violated Section 66-7-339, and that was the sole reason for the stop. Our analysis of Section 66-7-339 above shows Officer Jaimes was mistaken in both his belief that Defendant had violated Section 66-7-339 and in his belief that he had reasonable suspicion to stop and investigate Defendant, but we view this conduct as negligent, rather than flagrant. *See Edwards*, 2019-NMCA-070, ¶ 12 (describing the process of asking questions and asking for identity as negligent when the officer lacked reasonable suspicion for the stop).

{46} With respect to Defendant's contention that the officers' conduct was flagrant because they were not in the lawful discharge of their duties when Defendant was arrested, we disagree. When an officer is in the scope of their duty "societal interests dictate the protection of the officer from attack by someone who may question, albeit reasonably, the legality of the officer's actions." *Travison B.*, 2006-NMCA-146, ¶ 9. Regardless of the illegality of the officer's action of stopping and investigating Defendant for violating Section 66-7-339, Defendant did not have a license to physically attack a law enforcement officer when he himself was being placed under arrest. *See Doe*, 1978-NMSC-072, ¶ 11 (holding that a private citizen may not use

force to resist a search by an officer engaged in the performance of their duties whether or not the arrest was illegal). Even if the arrest was unlawful, it does not preclude a finding that an officer acted in the lawful discharge of their duties to establish the elements of the charged crimes. *See Tapia*, 2000-NMCA-054, ¶ 16. "The aggrieved person's rights lie in a civil action, not in a physical attack," when faced with unlawful police conduct. *Travison B.*, 2006-NMCA-146, ¶ 9.

{47}    Finally, to the extent that Defendant argues that the stop was pretextual because his offer of proof demonstrates that Hobbs police officers target minority communities and Officer Jaimes has a history of stopping individuals without reasonable suspicion, therefore creating flagrant police conduct, our review of the record reveals that Defendant did not file his offer of poof until five months after the district court denied his *Ochoa* Motion, and he did so without a motion to reconsider the denial of his *Ochoa* Motion or other effort to bring these alleged facts before the district court. Therefore we do not address these grounds further. *See State v. Goss*, 1991-NMCA-003, ¶¶ 8-14, 111 N.M. 530, 807 P.2d 228 (declining to address the defendant's constitutional challenge on appeal to suppress evidence where the challenge was not included in the defendant's motion to suppress before the district court and there was no indication in the record that the defendant brought factual information supporting it before the district court). In sum, the third attenuation factor weighs against suppression.

{48}    Applying the three attenuation factors for the new crime exception, we hold that the evidence of Defendant's battery, assault, and resisting, evading or obstructing charges were sufficiently attenuated and therefore admissible.[9] *See Tapia*, 2018-NMSC-017, ¶¶ 35, 37-38 (concluding that exclusion of the evidence is unnecessary when the first factor weighs in favor of suppression but the second and third factors weigh in favor of attenuation). Further, the subsequent discovery of controlled substances and marijuana where Defendant was arrested and in the patrol vehicle where Defendant was placed are also admissible.[10] Because the State argued the application of the new crime exception and Defendant was given an opportunity to respond, we, therefore, affirm the district court's denial of Defendant's motion to suppress under *Ochoa* as right for any reason.

**CONCLUSION**

{49}    We reverse the district court's denial of Defendant's *Foulenfont* Motion to dismiss the pedestrians on roadways charge, but affirm the denial with respect to the battery, assault, and resisting, evading or obstructing charges. Further, we affirm the

---

[9]We would reach the same conclusion under the analysis set forth in *Travison B*. Like the child in *Travison B.*, Defendant's physical altercation "constituted new criminal activity that is not subject to the exclusionary rule." 2006-NMCA-146, ¶ 9. We consider the act sufficiently "separate and distinct" from the initial stop such that the exclusionary rule does not apply. *Id.* ¶ 11.

[10]Defendant did not argue, and we, therefore, do not consider that the new crimes exception should not extend to the discovery of the controlled substances and marijuana subsequent to his arrest.

district court's denial of Defendant's *Ochoa* Motion. We remand to the district court for further proceedings consistent with this opinion.

{50}    **IT IS SO ORDERED.**

_____
**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

_____
**J. MILES HANISEE, Chief Judge**

_____
**JENNIFER L. ATTREP, Judge**