835 P.2d 863

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Wayne JONES, Defendant–Appellant.**

**No. 12392.**

Court of Appeals of New Mexico.

June 10, 1992.

Certiorari Denied July 16, 1992.

Tom Udall, Atty. Gen., Margaret Mc-Lean, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, Hugh W. Dangler, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

ALARID, Chief Judge.

The opinion previously filed in this case on April 13, 1992, is hereby withdrawn on the court's own motion and the following opinion is substituted therefor. Further in this cause, a motion for rehearing having been filed by appellee, and consideration

having been had by all of the members of the original panel, it is ordered that the motion for rehearing be denied.

Defendant appeals his conviction on one count each of trafficking cocaine, battery upon a peace officer, and resisting a peace officer. He makes four arguments on appeal: (1) the cocaine the police found on him was the fruit of an illegal search, so the trial court should have suppressed all evidence of matters the police found and events taking place after the frisk; (2) the prosecutor's repeated reference to a national cocaine problem during voir dire compels a retrial; (3) the prosecutor's repeated references implying a personal opinion on defendant's guilt compels a retrial; and (4) the trial court should have instructed the jury on a lesser included offense of simple battery because there was evidence that the police were acting illegally. We reverse on the suppression issue and remand all counts for retrial.

## FACTS

Two law enforcement officers of the Albuquerque Police Gang Unit were patrolling an area in Albuquerque known as Trumball Park. The police department had received several complaints of gang activity in the area, ranging from trespassing and graffiti to drive-by shooting. Defendant and two other men were walking on a city sidewalk toward and within a block of Trumball Park when the officers observed the three men. The officers knew one of the men as an avowed gang member and narcotics distributor. When the officers had seen this particular man in the past, the routine was to stop and frisk him, and to ask him some questions. The officers did so on this occasion as well. When the officers stopped this man, he perfunctorily raised his arms and locked his fingers behind his back, awaiting the frisk.

The officers observed that defendant was wearing blue nylon sweat pants with a wide gold stripe on each leg, and a similar sweat shirt. One officer testified that the sweat pants were partially sagging down defendant's buttocks, but not so much as the officer had seen on some gang members. Defendant also wore a particular brand of athletic shoes one gang favors. Based on the area where the officers observed defendant, the fact that he was with a known gang member, defendant's apparel, and his manner of wearing it (the sagging), the officers determined that defendant was a gang member. Their training and experience taught them that gang members are often armed. Thus, in the interest of safety, the officers ordered defendant to assume the same stance as the avowed member and proceeded to frisk defendant.

While frisking defendant, one officer felt what he thought was a deadly weapon in the left rear pocket of pants defendant wore beneath his sweat pants. The officer stated that he was going to remove the object. At that point, defendant began to struggle against the officer. There was a scuffle in which defendant hit the officer more than once, broke from his grasp, and bolted, only to be caught by a second officer. The first officer and a third officer assisted in subduing defendant. The officers discovered that the object thought to be a deadly weapon was a pocket knife. The officers placed defendant under arrest and searched him further for property. They found a plastic bag containing white rocks in defendant's right front pocket. The rocks turned out to be cocaine.

Defendant moved to suppress all evidence of events occurring and matters seized after the officer frisked defendant. The trial court stated that the officers had "reasonable cause" to stop and frisk defendant and denied the motion.

## THE VALIDITY OF THE STOP AND FRISK

The parties focus their argument on *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its requirement that police possess reasonable suspicion for a stop and frisk. The right of individuals to be free from unreasonable searches or seizures, including police stops and investigative detention is grounded upon constitutional protections contained in the Fourth Amendment to the United States Constitution. *Terry v. Ohio; see also United States v. Cortez*, 449 U.S. 411, 101 S.Ct.

690, 66 L.Ed.2d 621 (1981). Our supreme court, in *Ryder v. State,* 98 N.M. 316, 648 P.2d 774 (1982), cited with approval this court's opinion in *State v. Lewis,* 80 N.M. 274, 454 P.2d 360 (Ct.App.1969), recognizing this right.

*Lewis* articulated:

In appropriate circumstances and in an appropriate manner, a police officer may approach a person to investigate possibly criminal behavior even though the officer may not have probable cause for an arrest. To justify such an invasion of a citizen's personal security, the police officer must be able to specify acts which, together with rational inferences therefrom, reasonably warrant the intrusion.

*Id.* at 276, 454 P.2d at 362.

We recently reiterated the circumstances permitting a *Terry* investigative stop and frisk in *State v. Watley,* 109 N.M. 619, 788 P.2d 375 (Ct.App.1989) (officer must possess a particularized suspicion, based on the totality of the circumstances justifying a reasonable suspicion that the individual stopped is engaged in wrongdoing).

The state argues a new theory of reasonable suspicion. In effect, the state argues that gangs have created a crisis situation in urban areas and that law enforcement officials, faced with this crisis, ought to be able to respond accordingly. Thus, the state asks this court to balance the interests of government in this crisis situation with the interest private citizens have in avoiding intrusions on their personal security. *See United States v. Hensley,* 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985) (a balance of interests is implicit in the guarantee against unreasonable searches and seizures).

■ Whether or not a search and seizure, including a stop and frisk of an individual by law enforcement officers, violates the Fourth Amendment is judged under the facts of each case by balancing the degree of intrusion into an individual's privacy against the interest of the government in promoting crime prevention and detection. *See Terry v. Ohio,* 392 U.S. at 22, 88 S.Ct. at 1880.

■ The state wants this court to balance the interests by giving careful consideration to the dire circumstances law enforcement forces face when dealing with gangs. That balance, argues the state, ought to yield a lower threshold of individualized, particularized suspicion necessary for a stop and frisk. Although an individual's membership in a gang is a factor which may properly be considered by law enforcement officers under the totality of the circumstances in determining whether a stop and frisk is proper, that factor, standing alone, is insufficient to satisfy the requirements recognized in *Lewis. See In re Stephen L.,* 162 Cal.App.3d 257, 208 Cal.Rptr. 453 (1984) (knife discovered during patdown search of suspected gang member held admissible where officers patrolling known street gang hangout observed defendant near wall bearing fresh grafitti); *cf. State v. Cobbs,* 103 N.M. 623, 711 P.2d 900 (Ct.App.1985) (frisk supported by officer's knowledge of likelihood that burglar was armed). Yet, as the state notes, such a frisk assumes the validity of the initial stop. *See People v. Ratcliff,* 778 P.2d 1371 (Colo.1989) (en banc). The state cites us to no authority eschewing the need for individualized and particularized reasonable suspicion, even in the most critical of situations. *See generally* Comment, *A New Policy Sweeps Clean: An Analysis of the Constitutionality of the Los Angeles Police Department's Crackdown on Violent Street Gangs,* 16 W.St.U.L.Rev. 267 (1988) (justifying draconian police sweeps in gang neighborhoods by individualized, particularized suspicion of even minimal city ordinance violations). Even assuming, for the sake of discussion, that the state made a case for a crisis situation in Albuquerque, we will not dispense with the requirement of individualized, particularized suspicion.

■ The trial court made no findings relative to the motion to suppress. We indulge the presumption that the court found all facts in favor of reasonable suspicion. *See State v. Ferguson,* 111 N.M. 191, 803 P.2d 676 (Ct.App.1990). However, we review as a legal question whether those facts amount to reasonable suspicion. *Cf.*

*State v. Marquez,* 103 N.M. 265, 705 P.2d 170 (Ct.App.1985) (legal question of probable cause to arrest). We accept as true the fact that the officers stopped defendant for all the reasons we mention above because substantial evidence supports the fact. *Id.* Nonetheless, we can find nothing within the officers' knowledge at the time that they stopped defendant that they suspected him individually of committing a particular crime.

The state argues that this case is remarkably like the watershed *Terry.* However, in *Terry,* the officer who stopped the defendant suspected that he and his cohorts were inspecting a retail establishment for the opportunity to rob it. The officer suspected the defendant individually of being in the process of committing the particular crime of robbery. The officers in this case undoubtedly suspected defendant of being a gang member. Yet, they had only generalized suspicions that a gang member, not specifically defendant, had committed a litany of crimes. Their experience told them that a gang member, at any given time, is possibly engaged in a narcotics or weapons violation, or both. Yet, they had nothing connecting this individual defendant to a particular crime or crimes, except the likelihood that he was a gang member.

■ We will not make the final leap of faith the state urges upon us, i.e., that the inference arising from gang membership and presence in a gang activity area is sufficient alone to support reasonable suspicion. The state correctly argues that innocent activity can give rise to reasonable suspicion, *see United States v. Bell,* 892 F.2d 959 (10th Cir.1989), *cert. denied,* 496 U.S. 925, 110 S.Ct. 2618, 110 L.Ed.2d 639 (1990), but in that circumstance some indicia of criminal conduct, such as furtive mannerisms, must still lead the law enforcement officer to a reasonable suspicion of particular criminal activity. Defendant's style of dress was not furtive. Indeed, there is no evidence that his gait or mannerisms prior to the stop were furtive in any way. *Cf. id.* The officers had no articulable facts that would set defendant apart from an innocent gang pedestrian in the same area. As a result, the officers' initial stop of defendant was illegal and the evidence obtained as a result was tainted.

Accordingly, we hold that the trial court should have granted defendant's motion to suppress evidence that was the tainted fruit of the illegal stop. *See State v. Gorsuch,* 87 N.M. 135, 529 P.2d 1256 (Ct.App. 1974).

## THE EFFECT OF THE SUPPRESSION OF EVIDENCE

■ Our holding that the trial court must suppress the evidence that was the tainted fruit of the illegal stop begs the question of what is the tainted fruit. Neither party argues what the effect of our disposition of the stop and frisk issue should be on the three guilty verdicts. *State v. Chamberlain,* 109 N.M. 173, 783 P.2d 483 (Ct.App.1989), however, directs us in deciding what evidence the trial court should suppress. In *Chamberlain,* we assumed that the police had unlawfully remained in defendant's dwelling after he told them to leave. Nonetheless, the evidence of him shooting at the officers was still admissible because the officers did not obtain that evidence by exploiting the illegal entry. We rejected as "bizarre" the notion that the officers gained unlawful entry in order that the defendant may have the chance to shoot at them. *Id.,* 109 N.M. at 175, 783 P.2d at 485.

Similarly, we will not require suppression of the evidence of defendant's battery or evasion of the police officers. There is no evidence that they stopped and frisked defendant in order to have him hit them and then run away. We hold that the exclusionary rule applies only to the physical evidence obtained as a result of the search of defendant. *See State v. Chamberlain; State v. Gorsuch.* The question remains, however, as to how suppression of this evidence affects each of the verdicts in the context of whether a new trial is required.

We answer this question by referring to the recent case of *Clark v. State,* 112 N.M. 485, 816 P.2d 1107 (1991). In that case, the defendant was originally convicted of two counts of transporting stolen livestock and

one count of forgery. This court determined that an improper attack on the credibility of a witness was not harmless and required reversal of the defendant's convictions for transporting stolen livestock. However, we allowed the conviction for forgery to stand. Our supreme court reversed the forgery conviction as well and remanded the case for retrial. The rule the court stated was that error in admission of evidence is not harmless if there is a reasonable possibility that the evidence contributed to the convictions.

■ As in *Clark*, this case involves multiple convictions resulting from a single incident. In this case, the cocaine is direct evidence on the trafficking charge. *See* SCRA 1986, 11–403 (relevancy standard); 14–3111(1) (jury instruction requiring proof of possession, among other facts, for conviction of trafficking by possession with intent to distribute). We remand on the trafficking charge because the evidence that we require the trial court to suppress patently effects, i.e., more than reasonably possible effects, the verdict on that charge. *See State v. Gorsuch.*

■ In addition, the evidence siezed from defendant tended to prove defendant's motivation to batter the police officers and then escape them. Defendant's possession of the drug also tended to prove his bad character. There was strong, direct evidence of his battery and evasion of the police officers. We cannot say, however, that evidence of defendant's possession of cocaine did not contribute to his convictions for battery and evasion of a police officer. Still, there is at least a reasonable possibility that the cocaine evidence contributed to the convictions for battery and evasion of a police officer. We thus remand for a retrial on those two charges as well. *See Clark v. State.*

## DEFENDANT'S OTHER ISSUES

■ Because of the foregoing disposition, we need not discuss defendant's issues regarding the prosecutor's conduct during voir dire and closing argument. However, as we are remanding for retrial on the battery on a peace officer charge,

upon retrial of that charge, it is likely that defendant's issue about the simple battery instruction will arise again. We thus discuss that issue.

Defendant argues that there was evidence from which a jury could have found that the officers were acting illegally. Thus, defendant contends that the trial court should have instructed the jury on simple battery. *See* SCRA 1986, 14–320. Defendant's theory is that because there was evidence that the officers acted illegally, defendant was merely battering private citizens. We answer this contention by reference to *State v. Doe*, 92 N.M. 100, 583 P.2d 464 (1978), in which the defendant battered an officer while he searched the defendant incident to an arrest. There was no probable cause for the arrest. However, because the officer was acting in good faith within the scope of his duties, it was held that the defendant had no right to batter the officer. The supreme court further held that, as a matter law, the illegal arrest did not exculpate defendant of his conduct. *Id.*

Similarly, in this case, the evidence was that defendant, though stopped without reasonable suspicion, battered a police officer. Neither the *Doe* defendant nor defendant in this case was free to leave the police. In neither case was there justification for the respective seizures. Nonetheless, this absence of justification for the seizure did not excuse the *Doe* defendant and cannot excuse defendant in this case. To hold otherwise in the absence of bad faith would be to encourage extrajudicial resolution of search and seizure irregularities, a specter fraught with hazards. *See generally id.* (reasonable for defendants to submit peaceably to questionable search and take subsequent legal recourse); *State v. Chamberlain* (court cites to extensive caselaw in which courts considered admissibility of evidence of crimes against police officers conducting questionable searches and seizures). Because there was no evidence of the officers' bad faith, there was no evidence that the officers were private

citizens as defendant battered them. *See State v. Doe.* Accordingly, the trial court properly refused the instruction. *See State v. Rodriguez,* 84 N.M. 60, 499 P.2d 378 (Ct.App.1972) (trial court properly refused instruction when there was no evidence to support it).

CONCLUSION

We reverse the trial court's order denying the motion to suppress the evidence of the rock cocaine. We also reverse all the convictions and remand for a retrial without the evidence of the rock cocaine.

IT IS SO ORDERED.

DONNELLY and APODACA, JJ., concur.