WINDOM, Presiding Judge.
G.M. appeals his guilty-plea juvenile-delinquency adjudication for unlawful possession of a controlled substance. See § 13A-12 — 212(a)(1), Ala.Code 1975. On March 4, 2011, G.M. filed a motion to suppress evidence in which he argued that the search and subsequent seizure of cocaine from his wallet violated the 4th and 14th Amendments to the Constitution of the United States and Art. I, § 5, of the Alabama Constitution of 1901. Following a hearing, the juvenile court denied G.M.’s motion. Thereafter, G.M. pleaded “true” to the charge of unlawful possession of a controlled substance and reserved the right to appeal the denial of his motion to suppress.
During the suppression hearing, the State presented evidence indicating that G.M. and E.M., G.M.’s cousin and close friend, were students at Homewood High School, a public school. E.M. was brought to the assistant principal’s office for having a cellular telephone on campus, in violation of school policy. After E.M. denied having the telephone, Assistant Principal Eddie Cunningham used a metal detector to scan E.M. in an attempt to locate the cellular telephone. The metal detector sounded as it passed over E.M.’s back pocket. Cunningham then instructed E.M. to remove the contents of his pocket, which contained E.M.’s wallet and a battery for a cellular telephone. Cunningham opened the wallet and discovered several small bags of cocaine.
After discovering the cocaine, Cunningham asked E.M. who he had ridden to school with that morning and with whom he had been associating that day. E.M. told Cunningham that he had been with G.M. earlier that day. At that point, an English language learning (“ELL”) teacher, who was there to translate for E.M., suggested that school officials question G.M.[1] The ELL teacher described E.M. and G.M. as “peas [in] a pod.” (R. 10.) Cunningham informed the school’s principal, Dr. Kevin Maddox, that cocaine had been found on E.M. and that G.M.’s name had been mentioned during the investigation.
Dr. Maddox explained that, based on his personal observations of E.M. and G.M. and the “web” of information from other students and teachers, the boys’ “interactions] with one another [were] not typical of [the] studentfs] at Homewood High School.” (R. 28-29.) Dr. Maddox testified that E.M. and G.M.’s close association and behavior led school officials to believe that they were in a gang together. Because E.M. and G.M. were close friends, had been together earlier that day, and were possibly in a gang, Dr. Maddox called G.M. into his office for questioning about cocaine.
Once G.M. arrived in the principal’s office, Dr. Maddox explained to G.M. that his name had been mentioned during an investigation of another student and asked G.M. if he had “anything on [him] today at school that [he was] not suppose[d] to have [there].” (R. 17.) G.M. replied that he did not. Dr. Maddox then informed G.M. *821 that, out of concern for student safety, “[he] was going to conduct a search to make sure [G.M.] didn’t have anything ... on him.” (R. 17.) G.M. was cooperative and emptied his pockets as instructed. While looking through the items G.M. placed on the table, Dr. Maddox discovered a small bag of cocaine inside the pocket of G.M.’s wallet. The cocaine found in G.M.’s wallet formed the basis of his juvenile adjudication. After the hearing, the juvenile court denied G.M.’s motion to suppress.
On appeal, G.M. argues that the juvenile court erred in denying his motion to suppress the cocaine found in his wallet. Specifically, he contends that Dr. Maddox lacked the reasonable suspicion necessary to justify the search of his wallet. According to G.M., his association with E.M., on whom school officials had found cocaine earlier that day, was the sole basis for searching G.M.’s wallet. From there, G.M. asserts that his “association with a known or suspected wrongdoer is not sufficient to give rise to a reasonable suspicion”; therefore, the search of his wallet violated his constitutional rights. (G.M.’s brief, at 24.) This Court agrees.
In New Jersey v. T.L.O., 469 U.S. 325, 341-43,105 S.Ct. 733, 83 L.Ed.2d 720 (1985), the Supreme Court of the United States held that the appropriate standard for assessing the legality of a search of a student by a public-school official is reasonable suspicion. In reaching its decision, the Court explained:
“[T]he legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search. Determining the reasonableness of any search involves a twofold inquiry: first, one must consider ‘whether the ... action was justified at its inception,’ Terry v. Ohio, 392 U.S. [1,] 20, 88 S.Ct. [1868,] 1879 [(1968)]; second, one must determine whether the search as actually conducted ‘was reasonably related in scope to the circumstances which justified the interference in the first place,’ ibid. Under ordinary circumstances, a search of a student by a teacher or other school official will be ‘justified at its inception’ when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school. Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.
“This standard will, we trust, neither unduly burden the efforts of school authorities to maintain order in their schools nor authorize unrestrained intrusions upon the privacy of schoolchildren. By focusing attention on the question of reasonableness, the standard will spare teachers and school administrators the necessity of schooling themselves in the niceties of probable cause and permit them to regulate their conduct according to the dictates of reason and common sense. At the same time, the reasonableness standard should ensure that the interests of students will be invaded no more than is necessary to achieve the legitimate end of preserving order in the schools.”
Id. at 341-43 (footnotes omitted). Further,
“ ‘In reviewing reasonable suspicion determinations, courts must look at the “ ‘totality of the circumstances” ’ to see whether the detaining officer had a “ ‘particularized and objective basis’ ” for suspecting wrongdoing. United States v. Arvizu, 534 U.S. 266, *822 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), quoting United States v. Cortez, 449 U.S. 411, 417-418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). “This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that ‘might well elude an untrained person.’ ” Arvizu, 534 U.S. at 273, 122 S.Ct. 744 (quoting Cortez, 449 U.S. at 418, 101 S.Ct. 690).’ ”
Muse v. State, 42 So.3d 789, 791-92 (Ala.Crim.App.2009) (quoting State v. Odom, 872 So.2d 887, 890 (Ala.Crim.App.2003)). “ ‘[T]he determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior.’ ” United States v. Nunez, 455 F.3d 1223, 1226 (11th Cir.2006) (quoting Illinois v. Wardlow, 528 U.S. 119, 125, 120 S.Ct. 673,145 L.Ed.2d 570 (2000)).
This Court has explained:
“ ‘ “Reasonable suspicion is a less demanding standard than probable cause,” Alabama v. White, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990), requiring only that the detaining officers “have a particularized and objective basis for suspecting the person detained of criminal activity,” Webb v. State, 500 So.2d 1280, 1281 (Ala.Crim.App.), cert. denied, 500 So.2d 1282 (Ala.1986).’ ”
State v. Davis, 7 So.3d 468, 470 (Ala.Crim.App.2008) (quoting Wilsher v. State, 611 So.2d 1175, 1179 (Ala.Crim.App.1992)). Although reasonable suspicion is a less demanding standard than probable cause, a defendant’s mere association with a gang or with a known criminal is insufficient to create a reasonable suspicion that the defendant is engaged in wrongdoing. See State v. Jones, 114 N.M. 147, 151, 835 P.2d 863, 867 (N.M.Ct.App.1992) (holding that mere association with a known gang member does not amount to reasonable suspicion because the officers had “nothing connecting this individual defendant to a particular crime or crimes, except the likelihood that he was a gang member”); State v. Neal, 142 N.M. 176, 185, 164 P.3d 57, 66 (2007) (holding that a “[djefendant’s mere association with a convicted felon ..., who was under surveillance in an ongoing drug investigation, was insufficient to create reasonable suspicion of Defendant ... ”); State v. Varnado, 582 N.W.2d 886, 890 (Minn.1998) (holding that the mere association with a suspected drug dealer does not provide reasonable suspicion); United States v. Coggins, 986 F.2d 651, 655 (3d Cir.1993) (“Mere association with a known criminal cannot on its own be a basis for a ‘reasonable suspicion.’ ”) (quoting Ybarra v. Illinois, 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979)).
Here, Dr. Maddox’s basis for searching G.M.’s wallet was Dr. Maddox’s belief that G.M. might be associated with a gang and information that, earlier in the day, G.M. was with an individual, E.M., on whom school officials had found cocaine. G.M.’s association with E.M. and a gang, without more, was insufficient to create a reasonable suspicion that G.M. was involved in wrongdoing. Jones, 114 N.M. at 151, 835 P.2d at 867. Therefore, the juvenile court erroneously denied G.M.’s motion to suppress. Accordingly, the judgment of the juvenile court is reversed, and this cause is remanded for further proceedings.
REVERSED AND REMANDED.
WELCH, KELLUM, BURKE, and JOINER, JJ., concur.

. E.M. and G.M. do not speak English well.