The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number:

Filing Date: August 26, 2024

**NO. S-1-SC-39487**

**STATE OF NEW MEXICO,**

Plaintiff-Respondent,

v.

**KENTOINE JWAYNE PENMAN,**

Defendant-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Mark Sanchez, District Judge**

The Kennedy Law Firm, P.C.
Joseph P. Kennedy
Shannon L. Kennedy
Albuquerque, NM

for Petitioner

Raúl Torrez, Attorney General
Michael J. Thomas, Assistant Solicitor General
Santa Fe, NM

for Respondent

**OPINION**

**VARGAS, Justice.**

{1}    In this opinion, we reaffirm the rule that a defendant may not resort to violence in response to an illegal arrest so long as the officer is engaged in the lawful discharge of their duties. *See State v. Doe*, 1978-NMSC-072, ¶ 11, 92 N.M. 100, 583 P.2d 464. Defendant Kentoine Penman was charged with one count of battery upon a peace officer, contrary to NMSA 1978, Section 30-22-24(A) (1971); one count of assault upon a peace officer, contrary to NMSA 1978, Section 30-22-21(A)(1) (1971); one count of resisting, evading, or obstructing an officer, contrary to NMSA 1978, Section 30-22-1(D) (1981); two counts of possession of a controlled substance, contrary to NMSA 1978, Section 30-31-23(A) (2011, amended 2021); one count of possession of marijuana, contrary to NMSA 1978, Section 30-31-23(B)(1) (2011, amended 2021); and one count of pedestrians on roadways, contrary to NMSA 1978, Section 66-7-339 (1978, amended 2018). Defendant conditionally pleaded no contest to all charges after the district court denied his motion to suppress all evidence obtained after the stop and to dismiss some of his charges pursuant to *State v. Foulenfont*, 1995-NMCA-028, 119 N.M. 788, 895 P.2d 1329. On appeal, the Court of Appeals affirmed in every respect but one: it held that the district court should have dismissed Defendant's pedestrians on roadways charge because

standing in the road without more does not violate Section 66-7-339. *State v. Penman*, 2022-NMCA-065, ¶¶ 1, 25, 521 P.3d 96. It also concluded that the initial stop was not supported by reasonable suspicion and was therefore unconstitutional, *id.* ¶ 31, but declined to exclude the evidence of Defendant's remaining crimes because the new crime exception to the exclusionary rule applied. *Id.* ¶ 48.

{2}     Defendant argues to us that the Court of Appeals committed three errors. Defendant contends the Court of Appeals erred when it concluded the determination of whether an officer acted within the lawful discharge of their duties is always a question of fact, even on "accepted and unrebutted facts." Defendant also argues that the Court of Appeals set forth an overbroad test for whether an officer acts within the lawful discharge of their duties, which is an element of three of his charges. Under the correct test, Defendant argues, those three charges—assault upon a peace officer, battery upon a peace officer, and resisting, evading, or obstructing an officer—should have been dismissed pretrial. Lastly, Defendant argues that the Court of Appeals incorrectly applied the new crime exception to the exclusionary rule.

{3}     We agree with Defendant that whether an officer acted within the lawful discharge of their duties can be decided pretrial as a matter of law where the record is clear that the relevant facts are not disputed. On this point, we reverse the Court

2

of Appeals. We do not agree that the Court of Appeals established an overbroad test to determine whether an officer acted within the lawful discharge of their duties and we decline Defendant's invitation to narrow that test. We reaffirm *Doe*, 1978-NMSC-072, ¶¶ 12-15, concluding that an officer is lawfully discharging their duties when the officer is performing their official duties, i.e., acting within the scope of what the officer is employed to do. *Id*. ¶ 14. An officer is not lawfully discharging their duties when on a personal frolic, acting in bad faith, or using unreasonable force. *Id*. ¶¶ 9, 14. We reject Defendant's argument that his charges for assault upon a peace officer, battery upon a peace officer, and resisting, evading, or obstructing an officer should have been dismissed pretrial as a matter of law. We hold that the Court of Appeals correctly applied the new crime exception to the exclusionary rule and therefore reject Defendant's argument that the evidence of his remaining crimes should have been excluded by the district court.

## I. BACKGROUND

{4} The relevant facts are undisputed. On June 28, 2018 at about 9:00 p.m. in a residential neighborhood in Hobbs, New Mexico, Defendant and his companion were standing in the middle of the road. For that reason, three Hobbs Police Department officers approached with their patrol vehicle emergency lights activated.

Officer Juan Jaimes testified that he approached Defendant to investigate a potential violation of the pedestrians on roadways statute, Section 66-7-339.

{5} While Officer Jaimes investigated Defendant, an onlooker, Shamus Wright, verbally objected to Officer Jaimes' investigation of Defendant. This caused Officer Kevin Martinez and Officer Ruben Gastelum to turn their attention to Wright. Wright initially refused to give his identification. Officer Jaimes then told Defendant to "hang on" while he went to assist the other officers.

{6} Defendant then approached the police activity. He pulled out his phone and recorded just "a few inches away" from the face of one of the officers who was on the ground attempting to handcuff Wright. Officer Jaimes told Defendant several times to step back. Defendant eventually complied, but only temporarily. As Officers Martinez and Gastelum led Wright—who was in handcuffs—toward a patrol car, Defendant circled around the crowd and approached Officer Martinez from behind. When Defendant was within four to five feet of Officer Martinez, the officer turned around and told Defendant that he was going to be placed under arrest.

{7} When Officer Martinez attempted to grab Defendant's wrist, Defendant pushed Officer Martinez and tried to run away. Officer Martinez chased Defendant and grabbed at him, pulling down Defendant's shorts. Defendant stopped and assumed a fighting stance. Officer Martinez tackled him and Officer Jaimes assisted.

4

Defendant was placed under arrest and charged with the seven crimes described above. Baggies containing substances that later tested positive for cocaine, marijuana, and methamphetamine were found either near Defendant or in the patrol vehicle where Defendant was detained.

{8}    Defendant filed several pretrial motions, among them a motion raising two challenges to the charges based on Defendant's fundamental contention that the initial stop was illegal. Defendant asserted that because he was observed standing, but not walking, in the road, there was no reasonable suspicion that he violated the pedestrians on roadways statute, which made the initial stop illegal.

{9}    Defendant argued that all evidence resulting from the stop should be suppressed—and all charges therefore dismissed—because the exclusionary rule should apply. Defendant further argued that when Officer Jaimes detained Defendant without reasonable suspicion, Officer Jaimes was not engaging in the "lawful discharge" of his duties, which is required to support the charges of battery upon a peace officer, assault upon a peace officer, and resisting, evading, or obstructing an officer. Absent evidence that Officer Jaimes was acting in the lawful discharge of his duties, Defendant contended, those three charges must be dismissed pursuant to *Foulenfont*. *See State v. LaPietra*, 2010-NMCA-009, ¶ 7, 147 N.M. 569,

226 P.3d 668 ("In *Foulenfont*, we stated that it was proper for a district court to decide purely legal matters and dismiss a case when appropriate before trial.").

{10} After an evidentiary hearing, the district court denied Defendant's motion, concluding that dismissal under *Foulenfont* was not appropriate because the factual record was neither settled nor clear. Defendant entered a conditional plea of no contest to all charges and received a conditional discharge and eighteen months of probation.

{11} Defendant appealed. The Court of Appeals agreed with Defendant that Officer Jaimes' stopping Defendant for a potential violation of the pedestrians on roadways statute was not supported by reasonable suspicion. *Penman*, 2022-NMCA-065, ¶ 31. It reasoned that the pedestrians on roadways charge requires evidence of "walking along and upon" a road that is not present in this case. *Id*. ¶¶ 22, 31. The Court of Appeals held that merely standing in the road does not satisfy the statute and, merely standing in the road did not provide reasonable suspicion that Defendant violated Section 66-7-339, the pedestrians in the roadway statute. *Penman*, 2022-NMCA-065, ¶¶ 25, 31. The Court of Appeals concluded that Officer Jaimes' initial stop of Defendant was contrary to law and reversed the district court's denial of Defendant's motion to dismiss the charge of violating Section 66-7-339. *Penman*, 2022-NMCA-065, ¶¶ 31, 49.

6

**{12}** The Court of Appeals rejected Defendant's argument that the district court should have dismissed the three charges resulting from his conduct against the officers. *Id*. ¶¶ 32, 34. It stated that whether an officer acts in the lawful discharge of duties is a factual question and therefore is not amenable to disposition as a matter of law under *Foulenfont*. *Penman,* 2022-NMCA-065, ¶ 34. The Court of Appeals also declined to dismiss all evidence because, in its view, the new crime exception to the exclusionary rule applied as there was sufficient attenuation between the original, illegal stop and Defendant's subsequent crimes. *Id*. ¶¶ 37, 48.

**{13}** Defendant petitioned this Court for a writ of certiorari. We granted the petition and agreed to hear all three questions raised: whether the Court of Appeals (1) erred when it concluded that the lawful discharge of duties question is a factual question and therefore is not amenable to disposition under *Foulenfont*; (2) set forth the correct "lawful discharge of duties" test; and (3) erred by concluding that the officers' unlawful conduct was sufficiently attenuated from Defendant's subsequent crimes to warrant application of the new crimes exception to the exclusionary rule.

## II.  DISCUSSION

### A.  The Lawful Discharge of Duties Element Is Amenable to Pretrial Disposition As a Matter of Law Under *Foulenfont* and Rule 5-601 NMRA When the Relevant Facts Are Undisputed

{14}  Rule 5-601 governs motion practice in criminal trials. In *Foulenfont* the Court of Appeals held that a district court has authority under Rule 5-601 to consider purely legal issues raised in a criminal defendant's motion to dismiss and, where appropriate, dismiss charges or a case prior to a trial on the merits. *Foulenfont*, 1995-NMCA-028, ¶ 6; *see also State v. Jackson*, 2010-NMSC-032, ¶ 4 n.1, 148 N.M. 452, 237 P.3d 754 ("*Foulenfont* permits the accused to file a pretrial motion to challenge whether the facts alleged in the information or indictment, if proven, would constitute a crime as set forth in the applicable criminal statute."), *overruled on other grounds by State v. Radosevich*, 2018-NMSC-028, ¶¶ 2, 34, 419 P.3d 176. Defendant argues that whether an officer lawfully discharged their duties can be amenable to pretrial determination under *Foulenfont* and Rule 5-601. The Court of Appeals stated the issue must be determined by a jury as a question of fact. *Penman*, 2022-NMCA-065, ¶ 34. The legal question raised by Defendant is subject to de novo review. *See Russ v. Russ*, 2021-NMSC-014, ¶ 12, 485 P.3d 223 ("This Court reviews legal questions . . . de novo.").

8

{15} Where a jury is the fact finder, the jury must resolve factual disputes. *See State v. Hughey*, 2007-NMSC-036, ¶ 11, 142 N.M. 83, 163 P.3d 470 ("This Court has held that where a motion involves factual matters that are not capable of resolution without a trial on the merits, the trial court lacks the authority to grant the motion prior to trial."). For example, in *State v. Mares*, 1979-NMCA-049, ¶¶ 10, 14-15, 92 N.M. 687, 594 P.2d 347, the Court of Appeals concluded that whether the officer lawfully discharged their duties was a factual issue for the jury to decide because there was conflicting eyewitness testimony. But, contrary to the Court of Appeals' categorical statement that "[w]hether [an officer was] acting in the lawful discharge of their duties is a question of fact," *Penman*, 2022-NMCA-065, ¶ 34, there may be situations where the state and the defendant agree on the relevant facts and the decision involves a purely legal question. The Court in *Mares* explained that, although the district court is limited in its authority to decide factual questions concerning the lawfulness of an officer's actions, it retains such discretion in instances where "the minds of reasonable [people] could not differ." *Mares*, 1979-NMCA-049, ¶ 13 (internal quotation marks and citation omitted). Such a case may be appropriate for pretrial determination in accordance with *Foulenfont* and Rule 5-601. Accordingly, we hold that whether an officer acted within the lawful discharge

of their duties is amenable to disposition pretrial as a matter of law under *Foulenfont* and Rule 5-601 when the relevant facts are not in dispute.

**B.    We Decline Defendant's Invitation to Alter the Lawful Discharge of Duties Test Articulated in *Doe***

{16}    Defendant pleaded no contest to three charges which required that the officer against whom the crime was committed was acting within the lawful discharge of the officer's duties. *See* § 30-22-21(A)(1); § 30-22-24(A); § 30-22-1(D) (requiring that the defendant's act be committed on an officer acting "in the lawful discharge of his duties"). Defendant contends that an officer only acts within the lawful discharge of their duties when the officer acts within the bounds of their constitutional and statutory authority. In other words, in Defendant's view, an officer does not act within the lawful discharge of their duties if they act unlawfully, even if the officer acted reasonably and in good faith.

{17}    This Court addressed the contours of the lawful discharge of duties test in *Doe*. *See* 1978-NMSC-072, ¶¶ 11-15 (addressing "whether the use of force in resisting a search pursuant to an [unlawful] arrest constitutes a battery upon a police officer acting in the 'lawful discharge of his duties'" (citation omitted)). We concluded that "*[e]ven if an arrest is effected without probable cause*," i.e., unlawfully, "a police officer is engaged in the performance of his official duties if (h)e is simply acting within the scope of what the agent is employed to do." *Id.* ¶ 14

10

(alteration in original) (emphasis added) (internal quotation marks and citation omitted). We declared an officer is engaged in the lawful discharge of their duties if the officer is "engaged in the performance of his official duties," i.e., acting within the scope of what the officer is employed to do. *Id*. By contrast, the officer is not lawfully discharging their duties if the officer is on "'a personal frolic.'" *Id*. (citation omitted). We further suggested that an officer who acts in bad faith or uses unreasonable force is not lawfully discharging their duties. *Id*. ¶ 9 (stating that the law protects an officer making an illegal arrest from the threat of physical harm where the officer does not act in bad faith or use unreasonable force).

{18}     Defendant's proposed lawful discharge of duties test relies heavily on *State v. Phillips*, a Court of Appeals case. 2009-NMCA-021, 145 N.M. 615, 203 P.3d 146. *Phillips* states that an officer acts in the lawful discharge of their duties only where that officer's actions are lawful, i.e., constitutionally sound. *Id*. ¶ 19 (interpreting lawful discharge of duties as coextensive with the officer's "actual legal authority"). This directly conflicts with our holding in *Doe*, and, therefore *Phillips* is not controlling authority on this point. *See Doe*, 1978-NMSC-072, ¶¶ 7, 13-17 (holding that an officer acted within the lawful discharge of his duties because he was acting within the scope of what he was employed to do when searching the defendant pursuant to routine jail procedures, despite the arresting officer lacking probable

11

cause for the arrest); *cf. State v. Mares*, 2024-NMSC-002, ¶¶ 33-34, 543 P.3d 1198 (stating that lower courts are bound by the precedent of higher courts as an "axiom of adjudication" (internal quotation marks and citation omitted)).

{19} Defendant also argues that *State v. Frazier*, 1975-NMCA-074, 88 N.M. 103, 537 P.2d 711, provides authority for his definition of the lawful discharge of an officer's duties. In *Frazier*, an officer who made an illegal stop was found not to have acted in the lawful discharge of his duties. *Id.* ¶¶ 11, 15. But we read *Frazier* to be in harmony with *Doe*, as we explained in *Doe* itself. *See Doe*, 1978-NMSC-072, ¶¶ 12-13. The officer in *Frazier* admitted he had "no grounds to believe that defendant was committing or had committed a criminal offense." *Frazier*, 1975-NMCA-074, ¶ 11. The *Frazier* Court concluded there was "no legitimate reason for stopping the defendant." *Id*. ¶ 12. Absent an attempt by the state to offer any evidence of suspicious activity whatsoever the officer in *Frazier* did not act in the lawful discharge of his duties. *Id*. ¶ 11. By contrast, in the present case Officer Jaimes testified that he approached Defendant and his companion to investigate a potential criminal offense, a violation of the pedestrians in the roadway statute. Contrary to Defendant's contention, *Frazier* comports with *Doe* and does not support his interpretation of lawful discharge of duties.

{20} To the extent that Defendant asks us to overrule or modify *Doe*, we decline. Our appellate courts have repeatedly emphasized that, as a matter of policy, self-help is not the remedy for an unlawful arrest. *See Doe*, 1978-NMSC-072, ¶ 11 ("We hold that a private citizen may not use force to resist a search by an authorized police officer engaged in the performance of his duties whether or not the arrest is illegal."). The use of force, or other self-help measures, "by a potential defendant who objects to the legality [of police action] can lead to violence and serious physical injury." *Id.* ¶ 10. Accordingly, "[o]ne can reasonably be asked to submit peaceably and to take recourse in . . . legal remedies." *Id.*; *see also State v. Tapia*, 2000-NMCA-054, ¶ 17, 129 N.M. 209, 4 P.3d 37 ("If the officer acts illegally, those harmed may pursue private remedies rather than potentially exacerbating excitable circumstances by acting at the scene."). In sum, "[t]he societal interest in the orderly settlement of disputes between citizens and their government outweighs any individual interest in resisting a questionable search." *Doe*, 1978-NMSC-072, ¶ 10; *State v. Chamberlain*, 1991-NMSC-094, ¶ 23, 112 N.M. 723, 819 P.2d 673 (quoting *Doe*, 1978-NMSC-072, ¶ 25); *see also State v. Travison B.*, 2006-NMCA-146, ¶ 9, 140 N.M. 783, 149 P.3d 99; *State v. Tapia*, 2000-NMCA-054, ¶ 17 ("[S]ound public policy favors protecting police officers from assault or battery, regardless of whether the officer's actions were technically legal or illegal."). Defendant has not articulated any

13

persuasive reason that we should depart from this well-established approach whereby officers acting within the scope of their employment receive protection from statutes aimed at punishing those who attack, resist, or threaten them. *See, e.g.*, *Doe*, 1978-NMSC-072, ¶¶ 10, 14; *Tapia*, 2000-NMCA-054, ¶ 17.

{21}     We reiterate that an officer is lawfully discharging their duties when they are acting within the scope of what the officer is employed to do. *Doe*, 1978-NMSC-072, ¶ 14. An officer is not lawfully discharging their duties when the officer has "no grounds to believe that defendant was committing or had committed a criminal offense" and there was "no legitimate reason for stopping the defendant." *Frazier*, 1975-NMCA-074, ¶¶ 11-12, 15 We distinguish the facts in *Frazier* with those in *Doe*. Despite the illegality of the earlier arrest, the booking officer in *Doe* was lawfully discharging his duties. He "was conducting a search pursuant to routine jail procedures. The State had a legitimate interest in requiring that a person undergo a search prior to custodial confinement [and s]uch a search was necessary for the protection of the officers in charge of the facility, to prevent escape, and for the protection of the other inmates." *Doe*, 1978-NMSC-072, ¶ 13. As we explained in *Doe*, an officer is not engaging in their lawful duties when on a personal frolic, acting in bad faith, or using unreasonable force. *Id.* ¶¶ 9, 14. To the extent they conflict

14

with the test articulated in *Doe* and reaffirmed in this opinion, we overrule *Phillips*, 2009-NMCA-021, and any other case that relies on similarly flawed analysis.[1]

**C.    Defendant Is Not Entitled to Dismissal of Any of His Remaining Charges As a Matter of Law Under *Foulenfont***

{22}    Defendant argues that, as a matter of law, he is entitled to the dismissal of the charges of battery upon a peace officer, assault upon a peace officer, and resisting, evading, or obstructing an officer. *See* § 30-22-24(A); § 30-22-21(A)(1); § 30-22-1(D). Defendant asks us to reverse the Court of Appeals, which, like the district court, denied Defendant's *Foulenfont* motion as to these charges. *Penman*, 2022-NMCA-065, ¶¶ 1, 11, 49. We review this challenge de novo. *State v. Platero*, 2017-NMCA-083, ¶¶ 6-7, 406 P.3d 557 (stating that a decision of the district court to dismiss a charge pursuant to Rule 5-601 and *Foulenfont* is reviewed de novo).

{23}    The starting point of our analysis is the unchallenged holding of the Court of Appeals that the original stop of Defendant was unlawful because it was not supported by reasonable suspicion. *Penman*, 2022-NMCA-065, ¶ 31. Defendant submits the unlawful initial stop precludes a finding that the officers acted within

---

[1]*Doe* is also contrary to the holding in *State v. Calhoun*, 1917-NMSC-090, ¶ 8, 23 N.M. 681, 170 P. 750, which held, "[w]here an illegal arrest is made by an officer, the person arrested may resist the arrest or the continuation of custody thereunder, but not to the extent of excessive violence." This is contrary to *Doe*, 1978-NMSC-072, ¶ 11, and our holding here, both of which prohibit such resistance.

the lawful discharge of their duties. He argues that because a conviction for the three crimes in question requires such a finding, the charges must be dismissed.

{24} But, as explained above, we have rejected Defendant's proposed interpretation of the lawful discharge of an officer's duties test and, as a consequence, Defendant's basic argument topples. Applying the *Doe* test, we ask whether the facts are undisputed that the officers in this case were acting beyond the scope of what they were employed to do because they were on a personal frolic, acted in bad faith, or used unreasonable force. Defendant does not suggest that, under the uncontroverted facts, any officer used unreasonable force or was on a frolic. In the district court, Defendant offered evidence—including data intended to demonstrate that Hobbs police officers target minority communities—aimed at establishing that Officer Jaimes engaged in a pretextual stop, which might suggest bad faith. But this evidence was untimely, offered five months after the district court had ruled on the motion and without any request that the district court reconsider its denial of Defendant's motion to dismiss. Because the evidence in Defendant's offer of proof is not properly before us, we decline to consider it in our resolution of this issue. However, we emphasize that our holding does not extend to circumstances where the district court has before it properly-admitted evidence that an officer acted in bad faith. *Doe*, 1978-NMSC-072, ¶¶ 9, 14, (holding that officers act in the lawful

16

discharge of their duties when "[t]here is no evidence that [they] were acting in bad faith or using unreasonable force"); *accord State v. Jones*, 1992-NMCA-064, ¶¶ 22-24, 114 N.M. 147, 835 P.2d 863 (holding that, absent evidence of bad faith, the officers were in the lawful discharge of their duties despite a lack of reasonable suspicion for the stop). In circumstances where there is evidence of bad faith, we do not foreclose the possibility that pretrial dismissal may be appropriate as a matter of law. *See Tapia*, 2000-NMCA-054, ¶¶ 16, 29 ("Objectively unreasonable conduct could not, under *Doe*'s definition, be within the compass of an officer's duties. This objective aspect of the standard ensures that officers cannot remain deliberately ignorant of the requirements of the [New Mexico] Constitution and law and still be considered to be in lawful discharge of their duties." (citation omitted)).

{25}    In any event, Officer Jaimes testified that he was investigating a violation of the pedestrians on roadways statute, would have probably let Defendant go with a verbal warning had Defendant cooperated, and had concern for public safety. This evidence indicates that the issue of whether Officer Jaimes was lawfully discharging his duties is not appropriate for pretrial dismissal as a matter of law pursuant to *Foulenfont*. In sum, Defendant is not entitled to dismissal of the three charges at issue on the basis that the element of lawful discharge of duties cannot be met as a matter of law.

17

**{26}** Nor does Defendant attack another element of the crimes. He suggests that his arrest for resisting, evading, or obstructing an officer was a response to his exercise of his first amendment rights. But this argument is undeveloped. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (explaining that appellate courts are under no obligation to review unclear or undeveloped arguments). Furthermore, there is contrary evidence in the record that Defendant continued to insert himself into the arrest of Wright by repeatedly approaching the officers even after he was told several times to step back or back away. According to Officer Martinez's testimony, even after Officer Jaimes "had the crowd separated" from Officer Martinez and Officer Gastelum so that they could place Wright into a patrol unit, Defendant went around the crowd and again approached Officers Martinez and Gastelum from behind. When Defendant was four to five feet from the officers, Officer Martinez turned around and attempted to arrest Defendant for resisting, evading, or obstructing an officer because, in his view, Defendant's conduct created an officer safety concern. Defendant then tried to evade arrest and assumed a fighting stance. We therefore affirm the Court of Appeals' denial of Defendant's *Foulenfont* motion as to the charges of battery upon a peace officer, assault upon a peace officer, and resisting, evading, or obstructing an officer.

18

**D.     The New Crime Exception to the Exclusionary Rule Applies**

{27}    Defendant contends that the new crime exception to the exclusionary rule does not apply, contrary to the holding of the Court of Appeals, and that all evidence flowing from the illegal stop must be excluded, leading to the dismissal of all remaining charges.

{28}    Evidence obtained from a constitutionally unreasonable search is generally suppressed under a doctrine known as the exclusionary rule. *Herring v. United States*, 555 U.S. 135, 139 (2009); *State v. Tapia*, 2018-NMSC-017, ¶ 13, 414 P.3d 332. There are a number of recognized exceptions to the rule. *Utah v. Strieff*, 579 U.S. 232, 238 (2016). Where an exception to the exclusionary rule applies, evidence obtained from an illegal search or seizure can be used against a defendant. *See id*. at 238 (reviewing exceptions to the exclusionary rule and stating that, where they apply, evidence obtained from the unlawful search or seizure can be admitted).

{29}    Among the recognized exceptions in New Mexico is the new crime exception. *Tapia*, 2018-NMSC-017, ¶ 50. Under both the Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution, this exception applies if a new crime committed by the defendant is sufficiently attenuated from the unconstitutional police conduct such that the connection between that conduct and the evidence is remote. *Id*. ¶¶ 15-16, 35, 50; *see also*

*Strieff*, 579 U.S. at 238 (describing the federal attenuation doctrine). We apply the three factors adopted by this Court in *Tapia* to determine whether there has been sufficient attenuation in this case. *See* 2018-NMSC-017, ¶ 15 (adopting three federal attenuation factors to determine whether the new crime exception applies). Specifically, we examine "(1) the lapsed time between the illegality and the acquisition of the evidence, (2) the presence of intervening circumstances, and (3) the purpose and flagrancy of the official misconduct." *Id*. ¶¶ 15, 35, 50. Suppression rulings require the application of the law to the facts, which we review de novo. *State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856.

{30} The Court of Appeals determined that the first factor favored suppression because there was no evidence presented that substantial time had passed between the illegal stop and Defendant's eventual arrest. *Penman*, 2022-NMCA-065, ¶ 43. That Court concluded the second factor weighs in favor of admission because Defendant's new crimes created sufficient intervening circumstances to purge the taint of the initial, unconstitutional stop. *Id*. ¶ 44. Defendant's attempt to elude arrest through physical altercation with Officer Martinez was an "unprompted act of his own free will" rather than "a natural or probable progression" from the initial stop by Officer Jaimes. *Id*. (quoting *Tapia*, 2018-NMSC-017, ¶ 37).

{31} The Court of Appeals also concluded the third attenuation factor weighed in favor of admission because, in its view, there was no improper purpose behind Officer Jaimes' misconduct, nor was his misconduct flagrant. *Id*. ¶ 45. Officer Jaimes' conduct was not flagrant because Officer Jaimes testified that the reason for the stop was that he believed that Defendant was in violation of the pedestrians on roadways statute, Section 66-7-339. *Penman*, 2022-NMCA-065, ¶ 45. Although Defendant argued that the stop was pretextual, and therefore flagrant, Defendant failed to timely submit the evidence that might support this claim and failed to move for reconsideration. *Id*. ¶¶ 45, 47; *cf. id*. ¶ 45 (stating that this factor weighs in favor of suppression if a defendant can demonstrate that "'the misconduct was investigatory in design and purpose'" (quoting *State v. Ramey*, 2020-NMCA-041, ¶ 24, 473 P.3d 13)). In *Tapia*, 2018-NMSC-017, this Court found sufficient attenuation where the first factor favored suppression but the second and third favored application of the new crime exception; as in *Tapia*, the Court of Appeals below held that the evidence of Defendant's crimes was admissible. *Penman*, 2022-NMCA-065, ¶ 48 (citing *Tapia*, 2018-NMSC-017, ¶¶ 35, 37-38).

{32} Defendant challenges the Court of Appeals' analysis but fails to offer any compelling analysis of his own addressing the three attenuation factors or otherwise develop his arguments. He contends that the Court of Appeals committed error

because, even "assuming attenuation between the initial unlawful arrest and [Defendant's] later resistance," it "fail[ed] to find that [Defendant's] recording itself was recording of an unlawful arrest." But Defendant does not explain how a finding that he was recording an arrest of another individual renders the new crime exception inapplicable.

{33} Defendant also argues that the Court of Appeals committed error by engaging in the attenuation analysis because it is a "fact intensive inquiry," and that remand to the district court was required instead. Defendant does not develop or support this argument and we have no obligation to review it. *Guerra*, 2012-NMSC-014, ¶ 21. In any case, our appellate courts routinely apply the law to the facts to review suppression decisions without the benefit of findings of fact from the district court. *See Jason L.*, 2000-NMSC-018, ¶ 11 (stating that appellate review of a motion to suppress without district court findings of fact is a "regular occurrence"). We are unpersuaded that it was error for the Court of Appeals to engage in the attenuation analysis in this case.

{34} Lastly, Defendant contends that it was flagrant misconduct for the officers not to ensure that their body cameras were functioning and alleges this violated policies and procedures. Defendant does not adequately develop this argument in his briefing. Defendant provides no citation to any authority for the contention that this

22

should sway the third factor of the attenuation analysis in his favor, nor any citation to the record for his factual policy contentions aside from a citation to his assertion in a motion before the trial court, which likewise does not reference a policy. *See State v. Hall*, 2013-NMSC-001, ¶ 28, 294 P.3d 1235 ("The mere assertions and arguments of counsel are not evidence." (internal quotation marks and citation omitted)). Moreover, the district court found that there was no evidence that bad faith on the part of the officers caused the failure to record the incident.

{35}    We agree with the Court of Appeals that the new crime exception to the exclusionary rule applies and we agree with its analysis of the issue. The exclusionary rule applies only where its deterrence benefits outweigh its societal costs. *Strieff*, 579 U.S. at 237. The societal cost of excluding evidence of these new crimes, which include violent behavior against police officers, exceeds the gains. *See United States v. Pryor*, 32 F.3d 1192, 1196 (7th Cir. 1994) ("Police do not detain people hoping that they will commit new crimes in their presence . . . . Thus the gains from extending the rule to exclude evidence of fresh crimes are small, and the costs high."). Accordingly, we decline to exclude the evidence of Defendant's remaining crimes to which Defendant conditionally pleaded no contest.

## III. CONCLUSION

{36} We hold that whether an officer acted within the lawful discharge of their duties is not categorically a factual question but, instead, may be decided pretrial as a matter of law where the record is clear that the relevant facts are undisputed. We reverse the Court of Appeals on this issue. We overrule *Phillips*, 2009-NMCA-021, and any other case that relies on similarly flawed analysis. As we held in *Doe*, 1978-NMSC-072, ¶¶ 9-14, we hold that an officer is lawfully discharging their duties when the officer is performing their official duties, i.e., acting within the scope of what the officer is employed to do and not on a personal frolic, acting in bad faith, or using unreasonable force. We affirm the Court of Appeals' rejection of Defendant's argument that his charges for assault upon a peace officer, battery upon a peace officer, and resisting, evading, or obstructing an officer should have been dismissed pretrial as a matter of law. We affirm the Court of Appeals with regard to its holding that the evidence of Defendant's remaining crimes is admissible under the new crime exception of the exclusionary rule.

{37} **IT IS SO ORDERED.**

_____

**JULIE J. VARGAS, Justice**

24

**WE CONCUR:**

_____

**DAVID K. THOMSON, Chief Justice**

_____

**MICHAEL E. VIGIL, Justice**

_____

**C. SHANNON BACON, Justice**

_____

**BRIANA H. ZAMORA, Justice**